**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RAMONA MICHELE SMITH,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:17-cv-00552-Y-BP** |
| | § | |
| **NANCY A. BERRYHILL,** | § | |
| **Acting Commissioner of the Social** | § | |
| **Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES
MAGISTRATE JUDGE, NOTICE, AND ORDER**

Plaintiff Ramona Michele Smith ("Smith") filed this action under 42 U.S.C. § 405(g),
seeking judicial review of the denial by the Commissioner of the Social Security Administration
("Commissioner") of her application for disability insurance benefits under Title XVI of the Social
Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative
record, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means
**REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

**FINDINGS AND CONCLUSIONS**

**I.      STATEMENT OF THE CASE**

Smith filed an application for disability benefits on September 30, 2013. Transcript (Tr.)
280. The Commissioner denied her benefits initially and upon reconsideration. Tr. 197–202, 204–
07. Smith requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was
held before Judge Peri Collins on January 28, 2016. Tr. 110. Counsel represented Smith at the
hearing. *Id.* Vocational Expert ("VE") Molly Malloy Kelly testified at the hearing. *Id.* The ALJ

1

issued her decision on June 2, 2016, finding that Smith was not entitled to disability benefits. Tr. 104.

In her decision, the ALJ employed the statutory five-step analysis. At step one, she found that Smith had not engaged in substantial gainful activity since April 27, 2013, the alleged disability onset date. Tr. 95, Finding 2. At step two, the ALJ found that Smith had the severe impairments of multiple sclerosis, migraine headaches, obesity, carpal tunnel syndrome, sleep apnea, and adjustment disorder. Tr. 96, Finding 3. At step three, the ALJ found that Smith's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404(P)(1). Tr. 96, Finding 4. The ALJ determined that Smith had the residual functional capacity ("RFC") to perform light work with the following abilities and restrictions: standing/walking for two of eight hours; occasionally climb ramps and stairs but not ladders, ropes, or scaffolds; frequently stoop, crouch, crawl, and kneel; cannot balance on narrow objects but retains sufficient balance to stand, walk, and perform other postural maneuvers; frequently handle and finger; should avoid even moderate exposure to airborne irritants including dust, fumes, gases, and poor ventilation; and can understand, remember, and carry out simple one- to two-step instructions. Tr. 98, Finding 5.

At step four, the ALJ found that Smith was unable to perform any past relevant work. Tr. 102, Finding 6. At step five, the ALJ found that there existed a significant number of jobs in the national economy that Smith could perform. Tr. 103, Finding 10. Specifically, the ALJ noted the jobs of document preparer, telephone information clerk, and credit card verifier, based on the testimony of the VE. *Id.* As a result of the five-step analysis, the ALJ found that Smith had not been under a disability since April 27, 2013. Tr. 104, Finding 11.

The Appeals Council denied Smith's request for review on May 15, 2017. Tr. 1–4. Therefore the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II.    FACTUAL BACKGROUND

Smith was born on July 28, 1970, and was forty-two years old on his alleged disability onset date. Tr. 102. The highest grade of schooling she completed was an associate's degree. Tr. 127–28. Her past work included work as a mail clerk, data entry clerk, and bench inspector (video game refurbisher), and technical assistant. Tr. 143–45.

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to gain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R.

§ 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite [her] physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then prove [she] in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198.)

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th

Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.    ANALYSIS

Smith raises three issues on appeal. First, she argues that the ALJ failed to weigh the medical opinion evidence properly and thus incorrectly determined her RFC. Second, she argues that the ALJ did not evaluate Smith's subjective testimony correctly. Third, she argues that the ALJ asked the VE a flawed hypothetical question and that therefore the ALJ's step-five determination is not supported by substantial evidence.

**I.    The ALJ did not show good cause for giving minimal weight to the medical opinion of the treating physician regarding Smith's multiple sclerosis.**

Medical opinions, within the meaning of the Social Security Administration's regulations, "are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); *Kneeland v. Berryhill*, 850 F.3d 749, 759 (5th Cir. 2017). The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Under the regulations, "[a] treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial

evidence.'" *Martinez v. Chater*, 64 F.3d 172, 175–76 (5th Cir. 1995) (quoting 20 C.F.R. § 404.1527(c)(2)) (elision in original).

The ALJ can assign little or no weight to the opinion of any physician, including a treating physician, if the ALJ shows good cause for doing so. *Newton v. Apfel*, 209 F.3d 448, 455–56 (5th Cir. 2000). "Good cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Id.* at 456.The regulations require an ALJ to consider a number of factors if the ALJ determines that a treating physician's opinion is not entitled to controlling weight. *Id.* (citing 20 C.F.R. § 404.1527(c)(2)). 20 C.F.R. § 404.1527(c)(2) requires consideration of:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole; and
> (6) the specialization of the treating physician.

*Id.* The ALJ is not required to "mechanically list each Section 1527 factor," but it should be clear from her discussion that she considered each factor. *Coljohn v. Berryhill*, Civ. A. No. 3:16-CV-1208-K-BK, 2017 WL 2455962, at *7 (N.D. Tex. May 16, 2017), *report and recommendation adopted*, Civ. A. No. 3:16-CV-1208-K, 2017 WL 2462648 (N.D. Tex. June 6, 2017). The holding in *Newton* is limited to cases where the ALJ rejects the sole relevant medical opinion, as opposed to cases where the ALJ accepts a competing medical opinion. *Qualls v. Astrue*, 339 Fed. App'x 461, 467 (5th Cir. 2009).

The ALJ in Smith's case found that Smith's multiple sclerosis was "early without more than moderate limitations, and does not prevent her from performing work at the light exertional level" and that Smith's complaints of memory deficits were not supported by the objective findings

other than a consultative exam. Tr. 100. The ALJ wrote that she considered the opinions of the claimant's treating physicians at Exhibits 7F, 12F, and 21F, but gave those opinions "minimal weight as they are based solely on the claimant's self-reported symptoms and not on objecting [sic] medical findings." *Id.* The ALJ then noted, perhaps as conflicting evidence, that an exam of Smith's on October 2013 showed normal gait, normal sensation, full motor strength without atrophy, and intact cranial nerves (citing Tr. 460, Exhibit 4F at 6); and that physical exams in October 2014 and April 2015 showed Smith to be alert and cooperative, have no edema or visible deformities, and have clear lungs as well as a normal heart rate and rhythm (citing Tr. 977, Exhibit 20F at 9; Tr. 1042, Exhibit 24F at 3). Tr. 100. The ALJ concluded that the RFC's limitation to simple work at the light exertional level accounted for any limitations due to Smith's multiple sclerosis or medication side effects. *Id.*

A brief summary of the content of these exhibits will be helpful at this point. Regarding the opinions that the ALJ dismissed as having only minimal weight, Exhibit 7F comprises office treatment records from Smith's neurologist Srirekha Maddakuri, M.D., ("Dr. Maddakuri") with the practice of Kane Hall Barry Neurology in the period from October 30, 2013, to February 24, 2014. Tr. 571–601. These records primarily relate to Smith's multiple sclerosis, carpal tunnel syndrome, and migraine headaches. *Id.* They contain Smith's medical history, vital sign results, physical examination results, clinical assessments, medications, and treatment ordered, as related to those conditions for this period. *Id.* Exhibit 12F is a Gastointestinal Disorders Impairment Questionnaire prepared by Glen Ihde, M.D. on March 27, 2014. Tr. 758–63. The questionnaire concerns Smith's complaints of reflux disease, for which the doctor gave a prognosis of "undetermined at this time." *Id.* Exhibit 21F is a Multiple Sclerosis Impairment Questionnaire prepared by Dr. Maddakuri on April 30, 2015. *Id.* at 982–988. This questionnaire details the

limitations stemming from Smith's multiple sclerosis, fatigue/malaise, migraine, and carpal tunnel syndrome. *Id.* Dr. Maddakuri estimated Smith's functional limitations as being unable to sit for more than one hour and unable to stand or walk for even one full hour, occasionally being able to lift up to five pounds but never able to carry even that much, and needing to be absent from work more than three times a month. Tr. 986–87.

Regarding the exhibits that the ALJ seems to have used as conflicting evidence, Exhibit 4F comprises office treatment records from Dr. Maddakuri, as well as other medical professionals at Kane Hall Barry Neurology, for the period from December 11, 2012, to October 30, 2013, which apparently was at the beginning of Smith's treatment at that medical practice. These records relate to Smith's multiple sclerosis and carpal tunnel syndrome, and they are similar to Exhibit 7F except that they are from an earlier period in her treatment by Dr. Maddakuri. Tr. 455–535. Exhibits 20F and 24F are medical records from Smith's treatment at Southlake Oncology in 2014 and 2015, concerning her complaint of iron deficiency anemia. Tr. 977–981, 1040–45.

Of these six exhibits, the only one that fits the regulations' classification of a medical opinion from a treating physician is Exhibit 21F, Dr. Maddakuri's Multiple Sclerosis Impairment Questionnaire. *See* 20 C.F.R. § 404.1527(a)(1). This questionnaire includes judgments on the nature and severity of Smith's impairments, as well as the resulting limitations, from a neurology specialist who had been treating Smith for more than two years at the time of the questionnaire's completion. Tr. 982–88. The ALJ was therefore required to accord this opinion considerable weight unless the ALJ showed good cause for not doing so. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). And because there are no competing medical opinions in the record, the ALJ was also required to consider the factors listed in 20 C.F.R. § 404.1527(c)(2). *Newton*, 209 F.3d at 456; *see also Osborn v. Berryhill*, 3:16-CV-44-B-BN, 2017 WL 2312910, at *4 (N.D. Tex. May

11, 2017), *report and recommendation adopted*, 3:16-CV-44-B-BN, 2017 WL 2306581 (N.D. Tex. May 26, 2017) (citing *Wilkerson v. Berryhill*, 3:16-CV-851-BN, 2017 WL 1091601, at *3 (N.D. Tex. Mar. 23, 2017)) (stating that medical notes that do not give an opinion on the claimant's physical limitations in the workplace do not controvert the opinion of the claimant's treating physician).

The ALJ's discussion does not show that she had good cause for not giving considerable weight to the medical opinion of Smith's treating physician. When giving minimal weight to the opinion evidence of Smith's multiple sclerosis, the ALJ collects three different exhibits, one of which is not an opinion but only medical treatment records (Exhibit 7F), and another of which is an opinion from a physician who appears to have examined Smith once, and only concerning anemia rather than multiple sclerosis (Exhibit 12F). Tr. 100. The ALJ dismisses all three of these documents for the reason that that they are based solely on Smith's self-reported symptoms and not on objective medical findings. *Id.* One of these dismissed exhibits (7F) is an earlier set of medical records that is extremely similar to an exhibit (4F) with nearly identical evidence that the ALJ accepts in the next sentence of her opinion. *Compare* Tr. 577 *with* Tr. 460. More importantly, Dr. Maddakuri's questionnaire (Exhibit 21F) is clearly not based solely on self-reported symptoms. *See* Tr. 982–88. The questionnaire notes that Dr. Maddakuri had been treating Smith for over two years, at a frequency of every three months. Tr. 982. The questionnaire asks for the physician's clinical findings, as well as the laboratory and diagnostic test results supporting her diagnosis, which Dr. Maddakuri lists as a brain MRI, a cervical spine spinal tap, and labs with a multiple sclerosis profile. Tr. 983. The ALJ cites other medical records that appear to conflict with the questionnaire, but she does not analyze why these records should be given more weight or how precisely they conflict. For example, the ALJ did not explain why Dr. Maddakuri's medical notes

9

from 2013 (Exhibit 4F) should control over that same physician's medical opinion in 2015. *See* Tr. 100. The ALJ therefore did not establish good cause for rejecting the treating physician's medical opinion, and reversal is warranted.

The ALJ's opinion does show that she implicitly considered the factors listed in 20 C.F.R. § 404.1527(c)(2) when weighing Dr. Maddakuri's questionnaire. *See Rawls v. Astrue*, Civ. A. No. 4:10-CV-71-BJ, 2011 WL 725279, at *15 (N.D. Tex. Mar. 2, 2011) (Cureton, J.) (affirming the ALJ's opinion where the ALJ did not make an explicit finding on the Section 404.1527(c)(2) factors but her discussion showed she considered them); *Stancle v. Colvin*, Civ. A. No. 4:15-CV-00405-CAN, 2016 WL 3172784, at *11 (E.D. Tex. June 7, 2016) (noting that courts in the Fifth Circuit have found an ALJ's analysis of Section 404.1527(c)(2) to be sufficient where there was implicit consideration of the relevant factors). Concerning the first two factors and the fifth (examining relationship, treating relationship, and specialization), the ALJ refers to Dr. Maddakuri as Smith's treating neurologist, though not in her analysis of the questionnaire itself. Tr. 100. Regarding the third factor of supportability, the ALJ's reason for giving the opinion minimal weight—that it was based solely on self-reporting—shows that she considered the supportability of the opinion. *Id.* On the fourth factor, consistency, the ALJ cites to other evidence in the record that may conflict with the opinion to which she gave minimal weight. While the ALJ's analysis might have been clearer had she considered Dr. Maddakuri's questionnaire on its own instead of grouped with two other, dissimilar documents, the opinion shows that the ALJ implicitly considered all of the factors listed in 20 C.F.R. § 404.1527(c)(2). Nevertheless, because the ALJ did not establish good cause for giving only minimal weight to the medical opinion of the treating physician in this case, reversal is warranted.

Although remand is warranted on this ground alone, the Court will address Smith's other grounds for the purpose of guiding the proceedings on remand.

## II.     The ALJ did not err in evaluating and rejecting Smith's testimony concerning her symptoms.

In evaluating a claimant's symptoms, an ALJ considers all of the evidence presented, including information about a claimant's prior work record, the claimant's statements about her symptoms, evidence submitted by the claimant's medical sources, and observations by the Social Security Administration's employees and other persons. 20 C.F.R. §§ 404.1529, 416.929. "The law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994) (citing *Scharlow v. Schweiker*, 655 F.2d 645, 648–49 (5th Cir. 1981)). A reviewing court will not uphold an ALJ's unfavorable credibility evaluation of a claimant's complaints where the uncontroverted medical evidence shows a basis for the claimant's complaints unless the ALJ weighs the objective medical evidence and assigns articulated reasons for discrediting the claimant's subjective complaints. *See Abshire v. Bowen*, 848 F.2d 638, 642 (5th Cir. 1988) (regarding a claimant's complaints of pain). When rejecting a claimant's subjective testimony, the ALJ is not required to follow "formalistic rules in [her] articulation" of her reasons. *Falco*, 27 F.3d at 163–64.

Smith argues that that the ALJ erred in rejecting Smith's testimony concerning her symptoms. ECF No. 11 at 15 (citing the ALJ's statement at Tr. 99 that Smith's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely supported). Primarily, Smith disagrees with the ALJ's finding that treatment was successful in addressing Smith's symptoms, though Smith also briefly raises concerns over the ALJ's findings that there was only one piece of evidence that Smith had problems with her memory, that Smith voluntarily stopped taking her migraine medication, and that Smith's daily activities contradicted

her allegations that she could not work. *Id.* at 16–17. These scattered objections do not lead to a conclusion that the ALJ did not have a substantial basis for her evaluation of Smith's testimony. The ALJ extensively articulated the reasons for her conclusion that the objective medical evidence did not support Smith's alleged symptoms. Tr. 98–102; *see also Falco*, 27 F.3d at 164 ("The ALJ found the medical evidence more persuasive than the claimant's own testimony. These are precisely the kinds of determinations that the ALJ is best positioned to make."). This ground does not require reversal.

## III.    The ALJ did not rely on a defective hypothetical question to the VE.

A hypothetical question posed to a VE is not defective if (1) the hypothetical question reasonably incorporates all disabilities of the claimant recognized by the ALJ, and (2) "the claimant or his representative is afforded the opportunity to correct deficiencies in the ALJ's question by mentioning or suggesting to the vocational expert any purported defects in the hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). If the ALJ relies on testimony elicited by a defective hypothetical question, then the ALJ does not carry his burden to show that the claimant can perform available work despite the claimant's impairments. *Boyd*, 239 F.3d at 708. The claimant need not show prejudice because a defective hypothetical question is reversible error. *Guillen v. Astrue*, 584 F. Supp. 2d 930, 936 (W.D. Tex. 2008); *Singleton v. Colvin*, Civ. A. No. 2:15-CV-0268, 2016 WL 8674675, at *5 (N.D. Tex. Sept. 9, 2016); *Orosco v. Comm'r of Soc. Sec. Admin.*, 171 F. Supp. 3d 539, 544 (E.D. Tex. 2016).

The ALJ's RFC, among other listed limitations, stated that Smith could understand, remember, and carry out simple one- to two-step instructions. Tr. 98. In the ALJ's step-three

12

determination, the ALJ found that Smith had moderate difficulties with regard to concentration, persistence, and pace, because of memory issues evidenced in the record. Tr. 97. This determination was part of the required analysis under 20 C.F.R. § 404.1520a(c)(1). *Gipson v. Astrue*, Civ. A. No. 3:10-CV-1413-BK, 2011 WL 540299, at *5 (N.D. Tex. Feb. 11, 2011). The ALJ's first hypothetical to the VE asked whether the hypothetical individual could understand, remember, and carry out detailed but not complex instructions. Tr. 146. The ALJ then asked the VE to take the same hypothetical, except that the individual could only carry out one- to two-step instructions. Tr. 147. Thus the ALJ's ultimate hypothetical tracks the ALJ's RFC determination exactly, but it does not explicitly include the ALJ's finding at step three that Smith had moderate difficulties with regard to concentration, persistence, and pace.

Smith argues that this question to the VE was defective because the question did not include all of the limitations found in the ALJ's decision. ECF No. 11 at 16–18. Smith cites in support a number of cases from the Northern District of Texas, as well as from circuits courts outside the Fifth Circuit, for the proposition that a hypothetical is defective if it does not incorporate found limitations of concentration, persistence, or pace. *See, e.g., Voyles v. Comm'r of Soc. Sec. Admin.*, Civ. A. No. 3:10-CV-0652-B, 2011 WL 825711, at *9 (N.D. Tex. Feb. 16, 2011), *report and recommendation adopted*, Civ. A. No. 3:10-CV-0652-B, 2011 WL 824764 (N.D. Tex. Mar. 4, 2011) (reversing the ALJ because he did not question the VE about significant limitations found by numerous physicians or the limitations that the ALJ found himself in his opinion); *Ellis v. Astrue*, Civ. A. No. 7:09-CV-70-O, 2010 WL 3422872, at *5 (N.D. Tex. July 27, 2010), *report and recommendation adopted*, Civ. A. No. 7:09-CV-70-O(BF), 2010 WL 3398257 (N.D. Tex. Aug. 27, 2010) (reversing the ALJ because the ALJ's hypothetical question referenced an individual with no restrictions as to daily living activities and maintaining social functioning, while

the ALJ's RFC found mild restrictions in those areas); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) ("[W]e agree with other circuits that an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.' *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)."). Smith does not argue that the RFC was not based on substantial evidence or that the question to the VE was defective because it did not match the RFC that the ALJ found. She argues only that the ALJ's hypothetical question was defective because it does not include a limitation of "moderate difficulties with regard to concentration, persistence, and pace" that the ALJ found at step three, prior to her RFC finding. ECF No. 11 at 16–17; Tr. 97–98, 146–47.

It is true that, in this Circuit, a hypothetical question to the VE must "incorporate *reasonably* all disabilities of the claimant recognized by the ALJ." *Bowling*, 36 F.3d at 436 (emphasis added); *see also Singleton v. Colvin*, Civ. A. No. 2:15-CV-0268, 2016 WL 8674675, at *5 (N.D. Tex. Sept. 9, 2016) (Averitte, J.) (finding reversible error where the ALJ did not incorporate a limitation found in his RFC into his hypothetical question to the VE). But that does not mean that every statement concerning a disability that the ALJ makes in her decision, particularly in a separate part of her discussion from her RFC determination, must be reflected in her final hypothetical question to the VE in those exact words. *See, e.g., Short v. Astrue*, Civ. A. No. 3:11-CV-713-N-BN, 2013 WL 655020, at *4–6 (N.D. Tex. Feb. 5, 2013) (Horan, J.), *report and recommendation adopted*, Civ. A. No. 3:11-CV-713-N-BN, 2013 WL 655022 (N.D. Tex. Feb. 22, 2013) (affirming the ALJ's decision where the ALJ found moderate limitations in concentration, persistence, and pace at an earlier stage and incorporated it into the RFC and VE hypothetical by limiting the claimant to simple job instructions); *Herring v. Astrue*, 788 F. Supp.

14

2d 513, 519 (N.D. Tex. 2011) (Fitzwater, J.) (affirming the ALJ's decision where the ALJ found moderate social limitations at an earlier stage but did not use that specific language in his RFC). The ALJ's reason for her finding at step three that Smith had moderate difficulties with concentration, persistence, or pace was that she had memory impairment. Tr. 97. This finding is consistent with and reasonably incorporated in the ALJ's RFC and hypothetical question to the VE, which included a limitation regarding remembering simple one- to two-step instructions. Tr. 98, 146–47. Therefore the ALJ did not commit error, and this ground does not require reversal.

## V.    CONCLUSION

Because the ALJ did not establish good cause for giving only minimal weight to the medical opinion of the treating physician in this case, reversal and remand is proper.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that Senior United States District Judge Terry R. Means **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from

attacking on appeal any such factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **March 9, 2018**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed February 23, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE